UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNIVERSAL BEARING COMPANY,

       Plaintiff/Counter-Defendant,

v.

                                                       Case No. 10-11142
BAKER BEARING COMPANY, INC.,          Honorable Julian Abele Cook, Jr.

       Defendant/Counter-Plaintiff/
       Third Party Plaintiff,

v.

JACK CHERNEY, et al.,

       Third Party Defendants.

## ORDER

In this case, the Plaintiff/Counter-Defendant, Universal Bearing Company ("Universal"), filed a complaint in the Wayne County Circuit Court of Michigan, seeking to obtain a declaratory judgment against the Defendant/Counter-Plaintiff/Third Party Plaintiff, Baker Bearing Company, Inc. ("Baker"), which would determine that there is no existing binding contract between these two parties. As an alternative form of relief, Universal asks the Court to enter an order of rescission if a binding contractual relationship is found to exist between the parties. The case was subsequently removed to this federal district court by Baker. Shortly thereafter, Baker filed (1) a counterclaim against Universal, and (2) third party complaints against Jack Cherney (Universal's owner),

1

Michael Bridgeman, Universal Coupling & Power Transmission Company, and J.C. Repair Inc.[1] On April 30, 2010, the Universal Defendants filed a motion to dismiss Baker's claims of conversion and civil conspiracy which is now pending before the Court for resolution.

I.

Baker, an Oregon corporation, and Universal, incorporated under the laws of Michigan, are companies that are engaged in the business of buying and selling bearings for commercial use. Cherney, while acting in his capacity as the owner of Universal, conducts his business activities in the State of Michigan.

According to Baker, another third party Defendant, Mike Bridgeman, who had been one of its employees since 2005, was assigned to travel around the United States and visit various industrial auctions for the purpose of purchasing ball bearings (with Baker funds) which would eventually be inventoried and resold by Baker. Baker further submits that these ball bearings would be divided with the understanding that it would be proportionately reimbursed by Universal at a later time. In making this assertion, it is acknowledged by Baker that it is not certain if these two corporations had formulated any formal agreement to split the bearings. Universal emphatically denies that it ever had any express or implied contractual relationship with Baker regarding the distribution of the ball bearings.

In its lawsuit, Baker contends that Universal has failed to pay for several lots of the ball bearings that it received from Bridgeman. Baker, while acknowledging that its funds were used by Bridgeman to purchase the ball bearings, asserts that any distribution of the entire lot of these

---

[1] The Court will refer to the Plaintiff/Counter-Defendant, Universal, and the Third Party Defendant, Cherney, as the "Universal Defendants."

2

products to Universal was without its knowledge, consent or authority. Baker further theorizes that Universal thereafter sold the ball bearings to a third entity without authority or making any effort to compensate for its unjustified acquisition.

In its analysis of the current situation, Baker states that it is unclear whether these claimed losses arose from (1) Universal's failure to honor its agreement to 'split' the shipments of bearings or (2) a scheme to divert the bearings to Universal or some other entities owned by Cherney with the Bridgeman's help.

Believing that it had been victimized by a scheme or a contractual breach, Baker transmitted a letter to Universal in which it (1) identified the auctions where the bearings had been allegedly purchased by Bridgeman and (2) complained that the products had been delivered and received by this business competitor without any form of compensation. Universal reacted to the Baker communication by commencing this lawsuit in a state court.

II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a complaint if there has been a failure to state a claim on which relief can be granted. When faced with a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as being true and construe them in a light most favorable to the complaining party. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the plaintiff must articulate a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is "plausible on its face" only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

III.

In its now pending dispositive motion, the Universal Defendants submit that Baker's claims of conversion against them should be dismissed pursuant to the economic loss doctrine. It is their contention that inasmuch as they do not owe any duty to Baker which is separate and distinct from a contractual obligation, the economic loss doctrine precludes this tort claim. The Universal Defendants also advance the position that inasmuch as Baker's civil conspiracy claim is based on this alleged conversion, it must also be dismissed as a matter of law.

In opposing this request for relief, Baker acknowledges that the economic loss doctrine bars the joint recovery under the contract and tort theories of liability for the same conduct. However, Baker maintains that the Federal Rules of Civil Procedure authorize a party to plead claims in the alternative until the litigants have had an opportunity to develop the facts.

The Michigan Supreme Court stated in 1992 that the economic loss doctrine proscribes that if "a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic damages." *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 615 (Mich. 1992). The *Neibarger* Court explained that this doctrine was intended to distinguish and separate the "sometimes conflicting purposes of tort and contract law." *Id.* Unlike the principles in tort law where liability arises from policy considerations that allocate risk and encourage the production of safe products, in those commercial transactions wherein the parties have the ability to negotiate the terms, warranties, and possible remedies, those policy considerations, which encourage the safe production of goods, are not served. *Id.* at 616.

The Michigan Court of Appeals subsequently held that a plaintiff could advance a tort claim

only where it is distinct from any contractual duty assumed by the parties. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995) ("plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract.") Thus, the economic loss doctrine precludes a tort claim where there is no separate and distinct duty from a breach of contract. *Steel Strip Wheels, LTD v. General Riggins, LLC*, 2009 U.S. Dist. LEXIS 90407 at *35 (E.D. Mich. Sept. 30, 2009).

Here, the Universal Defendants collectively argue that the torts advanced by Baker are barred by the economic loss doctrine and must be dismissed because they are not distinct from its breach of contract claim. They cite several cases to support their position. *See, e.g., Steel Strip Wheels, LTD.* 2009 U.S. Dist. LEXIS 90407; *Hubbard v. Geostar Financial Servs.*, 2007 U.S. Dist. LEXIS 28280 (E.D. Mich. April 17, 2007); *Scarff Bros., Inc. v. Bischer Farms, Inc.*, 546 F. Supp. 2d 473 (E.D. Mich. 2008). However, it should be noted that in these cases a valid contractual agreement existed between the parties, thereby creating a contractual duty which barred the remaining tort claims. *See, Steel Strip Wheels, LTD*, 2009 U.S. Dist. LEXIS 90407 at *18 ("the parties concede that a valid contract was formed under the UCC"); *Hubbard*, 2007 U.S. Dist. LEXIS 28280 at *7 ("Defendant concedes that it breached the contract"); *Scarff Bros, Inc.*, 546 F. Supp. 2d at 487 ("The parties operated pursuant to a contract established by their course of dealing.")

Here, the question of whether there was a contract between Baker and Universal remains in dispute. Thus, the Universal Defendants' dispositive motion appears to be premature. Nevertheless, Baker asserts that it should be permitted to advance alternative and inconsistent claims until it is able to narrow its theories based on the facts to be discovered at a later stage in this

5

litigation. Indeed, Fed. R. Civ. P. 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." The Court agrees with Baker. Thus and under these circumstances, Baker is authorized to advance its admittedly inconsistent contract and tort claims at this stage in the proceedings. *See Siegel-Robert, Inc. v. Mayco Int'l LLC*, 2007 U.S. Dist. LEXIS 79750 at *5 (E.D. Mich. Oct. 29, 2007) ("even though Mayco's contract and tort claims may be inconsistent . . . Mayco is permitted to plead both contract and tort claims under Rule 8[(d)(3)].") The Universal Defendants maintain that the economic loss doctrine bars the challenged conversion claims because its applicability is based on the type of transaction and damages at issue - not on whether the parties had a binding contract. However, their argument is not supported by the rationale behind the economic loss doctrine, as explained in *Neibarger*. This doctrine was meant to distinguish between those losses (1) which pertain to agreements achieved through bargaining - a process whereby the parties could negotiate warranties, disclaimers, and limitation of remedies, and (2) that are attributable to unanticipated injuries and redressable through tort law. 486 N.W.2d at 615-16.

>Here, Baker has advanced an alternate claim of conversion, a tort that is defined as follows:
>
>(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>(a) Another person's stealing or embezzling property or converting property to the other person's own use.
>(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted .

Mich. Comp. Laws § 600.2919a(1). If the facts establish that there was no agreement and, as Baker suggests, there was collusion between Bridgeman and the Universal Defendants wherein the former

would embezzle from Baker in order to aid the latter in furthering their business operations with stolen goods, there would be no "commercial transaction." Rather, this would be one of those unanticipated situations in which Baker did not participate or negotiate.

The case cited by the Universal Defendants, *Cameron v. American Dental Tech., Inc.*, 1995 WL 599871 (E.D. Mich. Jun. 8, 1995), is distinguishable from the case at bar. In *Cameron*, six dentists, who had bought or leased dental laser machines that had been manufactured by one of the defendants, sued under the theories of, *inter alia*, misrepresentation, fraud, conspiracy to defraud, and aiding and abetting fraud. *Id.* at *2. The Court held that the economic loss doctrine precluded the plaintiffs' tort claims, even against the defendant with whom they did not have a contract because the claims arose from "a commercial transaction in goods" and the plaintiffs suffered an economic loss. *Id.* at *6 (quoting *Neibarger*, 486 N.W.2d at 615). However, if Baker's alternate theory of liability is supported by the facts (i.e., Bridgeman embezzled money and goods from his employer as the result of a conspiracy with the Universal Defendants), this would not be a case of a commercial transaction in goods. Unlike the plaintiffs in *Cameron*, Baker would not be a purchaser or seller of goods, and, thus, its claims of conversion would not be foreclosed by the economic loss doctrine at this early stage in the litigation.

Inasmuch as Baker's accusations of civil conspiracy against the Universal Defendants are based on an alleged conversion, this claim also survives the currently pending motion to dismiss. *See United Rentals, Inc. v. Keizer*, 355 F.3d 399, 413 (6th Cir. 2004) (civil conspiracy requires concerted action to accomplish unlawful purpose or to accomplish a lawful purpose through unlawful means).

IV.

Accordingly and for the reasons explained above, the Court denies the Universal Defendants' motion to dismiss.

IT IS SO ORDERED.

Dated: August 17, 2010         s/Julian Abele Cook, Jr.
       Detroit, Michigan       JULIAN ABELE COOK, JR.
                               United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 17, 2010.

                               s/ Kay Doaks
                               Case Manager